2016 UT App 54

THE UTAH COURT OF APPEALS

FIRE INSURANCE EXCHANGE,
Appellee,
*v.*
ROBERT ALLEN OLTMANNS,
Appellant.

Opinion
No. 20140984-CA
Filed March 24, 2016

Second District Court, Farmington Department
The Honorable Glen R. Dawson
No. 090700825

Donald L. Dalton, Attorney for Appellant

Stewart B. Harman and Joel D. Taylor, Attorneys
for Appellee

JUDGE GREGORY K. ORME authored this Opinion, in which JUDGES
J. FREDERIC VOROS JR. and MICHELE M. CHRISTIANSEN concurred.

ORME, Judge:

¶1     Appellant Robert Allen Oltmanns returns to this court, once again appealing a district court decision granting summary judgment to Fire Insurance Exchange. The core dispute between these two parties previously came to this court and was resolved in *Fire Insurance Exchange v. Oltmanns*, 2012 UT App 230, 285 P.3d 802. Last time we reversed; this time, we affirm.

BACKGROUND

¶2     This suit grew out of an accident in 2006 involving a personal watercraft piloted by Oltmanns, which resulted in the injury of Oltmanns's brother-in-law. Concerned early on about

potential tort liability stemming from the accident, Oltmanns consulted with a Fire Insurance agent, who offered to assist Oltmanns in filing a claim even though the agent was not certain there would be coverage.[1] At that time, Oltmanns declined the agent's offer of assistance in submitting the claim.

¶3　A year later, the brother-in-law sued Oltmanns for negligence and won, obtaining a judgment against him. Oltmanns again contacted Fire Insurance. This time, however, Oltmanns demanded that Fire Insurance pay the full amount of his liability to his brother-in-law under his homeowner's insurance policy. After extensive in-house review, Fire Insurance submitted Oltmanns's claim to outside counsel for a coverage opinion. It also told Oltmanns's attorney to continue representing Oltmanns and informed him that Fire Insurance might reimburse him for his fees and expenses.

¶4　Soon thereafter, in a quite thorough coverage opinion, outside counsel expressed the view that the term "jet ski" as used in Oltmanns's policy most likely would be construed as referring to the broad category of motorized personal watercraft such that, in counsel's opinion, "Fire Insurance had a 75% chance of prevailing in a declaratory relief action." Counsel advised filing such an action to receive a definitive ruling on the coverage question, and Fire Insurance then filed this declaratory judgment action seeking a determination of its responsibility to Oltmanns under his policy.

¶5　Shortly after filing its action, Fire Insurance moved for summary judgment, and the district court, agreeing with outside counsel's interpretation, ruled in favor of Fire Insurance.

---

1. Oltmanns's policy with Fire Insurance excluded coverage for accidents involving the use of "jet skis." In the prior appeal, we concluded that this term was ambiguous. *See Fire Insurance Exchange v. Oltmanns*, 2012 UT App 230, ¶ 10, 285 P.3d 802.

Oltmanns appealed, and we reversed, concluding that although one definition of the term "jet ski" supported the view taken by Fire Insurance and the district court, the term was ambiguous because "jet ski" was subject to several different interpretations, some of which favored Oltmanns. *Oltmanns*, 2012 UT App 230, ¶¶ 9–10. Construing the contract against the drafter and in favor of the policyholder, we ruled in favor of Oltmanns and remanded the case to the district court. *Id.* ¶ 11.

¶6     Fire Insurance did not petition for rehearing, did not petition for certiorari review, and did not try to develop new arguments for the district court's consideration on remand. On the contrary, it promptly settled with Oltmanns and agreed to reimburse him for the attorney fees incurred in defending the tort case. Fire Insurance declined, however, to cover Oltmanns's attorney fees related to the coverage dispute, including those related to the successful appeal from the district court's grant of summary judgment to Fire Insurance.

¶7     In an effort to recover those attorney fees, Oltmanns filed a counterclaim against Fire Insurance in the still-open declaratory judgment action, claiming breach of the implied covenant of good faith and fair dealing for Fire Insurance's alleged failure to "fairly evaluate" the claim pending against Oltmanns and for "unreasonably reject[ing]" that claim.[2] The parties began discovery on the issues presented by the counterclaim in the fall of 2013.

---

2. Unlike some insurance policies that apparently allow for the recovery of attorney fees from the insurer by the insured following a successful coverage action, both sides indicated during oral argument that the insurance contract in this case has no such provision. Therefore, the parties agree, Oltmanns is entitled to recover his attorney fees only if he can prove bad faith—or at least a lack of good faith—by Fire Insurance.

¶8    Almost a year later, Fire Insurance moved for summary judgment, relying on the coverage opinion letter and the affidavit of the claims specialist who investigated Oltmanns's insurance claim. Despite Oltmanns's opposition to the motion, the district court determined that Fire Insurance's denial of the claim was reasonable because the interpretation issue was fairly debatable. The court granted summary judgment to Fire Insurance.

ISSUE AND STANDARD OF REVIEW

¶9    Oltmanns contends that Fire Insurance was not entitled to summary judgment because the interpretation question was not "fairly debatable" as a matter of law. Whether denial of a claim was "fairly debatable under the facts . . . is a question of law that we review for correctness." *Prince v. Bear River Mut. Ins. Co.*, 2002 UT 68, ¶ 33, 56 P.3d 524. Although on summary judgment we ordinarily "accord no deference to the district court's conclusions of law, including its interpretation of precedent and statute," *Torian v. Craig*, 2012 UT 63, ¶ 13, 289 P.3d 479, given the highly fact-intensive inquiry typically necessary to make a "fairly debatable" determination, "trial courts have 'some discretion'" and "we will therefore 'grant the trial court's conclusion some deference'" when the pivotal question is fact sensitive, *Prince*, 2002 UT 68, ¶ 33 (quoting *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 464 (Utah 1996)). Here, it is not, *see infra* ¶ 12, and so we review the district court's ruling for correctness, according it no deference.

ANALYSIS

¶10    Oltmanns challenges Fire Insurance's decision to obtain a coverage determination through its declaratory judgment action, claiming that Fire Insurance's decision to do so was in bad faith, breaching the covenant of good faith and fair dealing.

Fire Insurance, for its part, defends its actions as reasonable under the "fairly debatable" standard. The district court agreed with Fire Insurance and granted summary judgment in its favor.

¶11   "[D]enial of a claim is reasonable if the insured's claim is fairly debatable." *Prince*, 2002 UT 68, ¶ 28. This is because "if an insurer denies an 'insured's claim [that] is fairly debatable, [then] the insurer is entitled to debate it and cannot be held to have breached the implied covenant [of good faith and fair dealing] if it chooses to do so.'" *Id.* (quoting *Morris v. Health Net of Cal., Inc.*, 1999 UT 95, ¶ 7, 988 P.2d 940) (first and second alterations in original) (additional internal quotation marks omitted). The district court's prior ruling validating Fire Insurance's interpretation of the policy surely seems to make it difficult to argue that Fire Insurance's position was not at least "fairly debatable."

¶12   In some respects, the instant case is not unlike previous "fairly debatable" cases in that reasonable minds could—and did—differ as to their interpretation of key points. *See id.* ¶¶ 35–36; *Callioux v. Progressive Ins. Co.*, 745 P.2d 838, 842 (Utah Ct. App. 1987). *See also Morris v. Health Net of Cal., Inc.*, 1999 UT 95, ¶ 7, 988 P.2d 940 ("[U]nder Utah law, 'when an insured's claim is fairly debatable, the insurer is entitled to debate it[.]'") (quoting *Billings v. Union Bankers Ins. Co.*, 918 P.2d 461, 465 (Utah 1996)). Unlike those cases, however, here the facts are not in dispute and never have been; instead, this case concerns a purely legal issue, i.e., whether the term "jet ski" as used in Oltmanns's insurance policy was ambiguous as a matter of law. In the first appeal, we concluded that the term was ambiguous, and resolved the ambiguity against the insurer. *See Oltmanns*, 2012 UT App 230, ¶¶ 10–11. *See also United States Fidelity & Guar. Co. v. Sandt*, 854 P.2d 519, 523 (Utah 1993) ("[P]rovisions that limit or exclude coverage should be strictly construed against the insurer.").

¶13   This conclusion does not, however, compel the determination that the meaning of the clause in question was not "fairly debatable." On the contrary, considering the totality of the circumstances, it is very relevant that courts, albeit in somewhat different contexts than that presented in this case, have concluded that both "stand-up" and "sit-down" watercraft may be considered jet skis. *See, e.g., Ford v. Polaris Indus., Inc.*, 43 Cal. Rptr. 3d 215, 217–18 (Ct. App. 2006) (referring to a two-seater personal watercraft as a "jet ski"); *State Farm Fire & Casualty Co. v. Johnson*, 596 So. 2d 1162, 1163 (Fla. Dist. Ct. App. 1992) (per curiam) ("The term 'jet ski' is often used as a generic term for all personal watercraft despite the fact that it is a registered trademark of Kawasaki."). It is additionally relevant that Wikipedia, the key source for our conclusion in *Oltmanns* as to the colloquial understanding of the term "jet ski," now features no less than four different definitions of the term, one of which supports Oltmanns's position and one of which supports that of Fire Insurance. *See Jet Ski*, Wikipedia, https://en.wikipedia.org/wiki/Jet_Ski [https://perma.cc/Z5N9-M2CG] (last visited Feb. 17, 2016).[3] Finally, we find it very

---

3. The Wikipedia entry, as presently constituted, actually furnishes stronger support for Fire Insurance's position than it previously did, because the "sit-down" and "stand-up" distinction we relied upon in seeing ambiguity has since been deleted. *Compare Fire Insurance Exchange v. Oltmanns*, 2012 UT App 230, ¶ 9, 285 P.3d 802 ("The term 'Jet Ski' . . . is often mis-applied to all personal watercraft with pivoting handlepoles manipulated by a standing rider; these are properly known as Stand-up [Personal Watercraft]."), *with Jet Ski*, Wikipedia, https://en.wikipedia.org/wiki/Jet_Ski [https://perma.cc/Z5N9-M2CG] (last visited Feb. 17, 2016) ("Jet Ski is the brand name of a personal watercraft manufactured by Kawasaki. . . . The term is sometimes used to refer to any type of personal watercraft . . . . Though the proper noun 'Jet Ski' is a registered trademark of

(continued…)

persuasive that the district court initially accepted Fire Insurance's theory and argument in this case, i.e., in the first round of judicial consideration, not only was there a debate, but Fire Insurance actually won the debate.

¶14    As a further note, although it is true that we ultimately accepted the definition argued for by Oltmanns in *Fire Insurance Exchange v. Oltmanns*, 2012 UT App 230, 285 P.3d 802, we did so only after applying the interpretative rule that ambiguous exclusions are to be construed against the insurer. *Id.* ¶ 6. Moreover, we applied that rule even though application of the rule, in these precise terms, was not Oltmanns's primary theory in the original appeal.

CONCLUSION

¶15    An insurance company may reasonably and fairly rely, at least initially, upon a coverage opinion from qualified outside counsel, received in the course of careful investigation and evaluation of a claim. Moreover, submitting the issue to a court for interpretation in a declaratory judgment action is a prudent, reasonable step toward the resolution of a legitimate dispute

---

(…continued)

Kawasaki, the common noun 'jet ski' refers to small recreational watercraft."). It is, of course, difficult to discern whether the change came about in response to our prior opinion, perhaps at the instance of someone with a stake in the debate. *See generally Oltmanns*, 2012 UT App 230, ¶ 18 n.3 (Voros, J., concurring) ("Among its shortcomings—and strengths—is Wikipedia's fluidity. Anyone can edit a Wikipedia entry at any time, making it vulnerable to opportunistic editing. Thus, an unscrupulous lawyer (or client) could edit the Web site entry to frame the facts in a light favorable to the client's cause.") (citations and internal quotation marks omitted).

over a coverage term or exclusion. And when an insurance company proceeds in a reasonable way to resolve a difficult coverage question, its eventual loss at the appellate level does not foreclose a determination that an issue of interpretation was fairly debatable, as was the case here.

¶16    Affirmed.[4]

———————

4. Oltmanns also challenges the district court's denial of a motion he filed under former rule 56(f) of the Utah Rules of Civil Procedure. Because we conclude that Fire Insurance's interpretation of the term "jet ski" as used in Oltmanns's insurance policy was "fairly debatable" as a matter of law, *supra* ¶¶ 11–13, we decline to consider this issue.